MARY McDERMOTT, respondent,

*v.*

LYNN M. McDERMOTT, appellant.

[Decided October 21st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, who filed the following opinion:

"The bill in this cause is filed for maintenance based on extreme cruelty. The parties were married in January, 1915. A week before the first child was born, which, as I recall it, was the latter part of 1915, he threw a shoe at her, striking her in the stomach, apparently without reasonable provocation. On September 28th, 1915, he threw a pocket-book at her, striking her in the face and bruising her. On July 15th, 1917, he threatened to kill her. All the foregoing acts of cruelty are corroborated, and I take them to be true, notwithstanding his sole denial.

"The wife charges that on October 25th, 1915, he threw her downstairs. This is not corroborated. In October, 1915, she says he threw her down and had a carving knife in his hands, and, fearing that he would use it on her, she bit him in the arm. He says he now bears the scar from this. His story is that she threatened him with the knife, and he took it out of her hands, and that she bit him. Neither side is corroborated as to this.

"On May 11th, 1919, she says he punched her in the jaw, raising a swelling, and struck her on the leg with a file, leaving a blue bruise. The existence of the swelling and the bruise is testified to by Mrs. Schofield, who says that on the same afternoon she asked the defendant what was the matter with them, and he said that 'she got fresh and he hit her.' I regard this, therefore, as corroboration.

"The wife also says that on June 2d, when about to retire, she, being in her menstrual period, he desired to have sexual inter-

course, and she declined on account of her condition, and that he seized her by the hand, wrenched her wrist, forced her into bed and forced the intercourse, which resulted in a prolonged flowing, for which she afterwards sought a doctor. The doctor testified to his treating her, but said that while this flow could come from intercourse during the menstrual period, yet it could also come from other causes. She left him on the 3d of June, 1919, and filed her bill on June 7th, 1919. About a month after she left she called him on the 'phone and asked him to come to see her, and he told her to see his lawyer. She, also, had a lawyer at the time.

"At the hearing neither party appeared willing to resume marital relations, he putting it on the ground that he wanted her to reform, namely, to stop nagging him; and she, on the ground that she was afraid of a continuation of his cruelty, and said that if she knew he would reform she would live with him.

"I think the evidence clearly demonstrates that the defendant was guilty of extreme cruelty. *Close v. Close,* 25 *N. J. Eq.* 526; *2 Bid. Div. Prac. 96.* . I am satisfied, from the character of the defendant as portrayed by the testimony, that he has not repented of his misconduct, and there is no reasonable certainty that he will amend his ways; thus, the defendant, if she returned, could be reasonably apprehensive of a continuance of his past conduct.

"The husband denies, *in toto,* the charges made against him, but I think it is perfectly plain that they are true, at least, in so far as the corroboration extends.

"As a counter-charge against the wife (not, as I take it, in justification of his conduct) he asserts that his wife was a nagger; that she called him a 'dope' and a 'poor fish;' I cannot bring myself to believe that, giving the greatest effect to these charges, they would justify the action of the husband. *Duvale v. Duvale,* 165 *N. J. Eq.* 771; *affirming,* 84 *Atl. Rep. 888,* and the cases cited in the note to *2 Bid. Div. Prac. 98.* But I am satisfied, from the appearance and demeanor of the complainant on the stand, that she was not a nagger. She may have had cause to complain against her husband for his inability to support her. But there was not the slightest indication in the personality of.

the complainant which would support the theory that she was anything other than of normal temperament. The witnesses in her behalf testify to her even temperament, and the only testimony to the contrary is that of the parent and the relatives of the defendant, all of whom, as I perceived them on the stand, gave exaggerated opinions of the conduct of the complainant; but, giving all the weight that necessarily attaches to this testimony, I am not prepared to say that, in any one instance, the assaults made by the husband on the wife were based upon any provocation.

"I will advise a decree for the complainant.

"In view of the fact that the wife is now earning $15 a week, and the husband $34, I will allow the wife, at the present time, $5 a week, with leave to apply to change the allowance if the situation of the parties changes.

"Counsel may come before me with a form of decree on Monday, the 19th of January, 1920, at the chancery chambers at Jersey City."

*Mr. Eric Jentz,* for the respondent.

*Mr. Edward Stover,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed; for the reasons stated in the opinion filed in the court below by Vice-Chancellor Griffin.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.